Granger, C. J.
Had the plaintiff power to become the owner of the assets of the Western Reserve Bank, including the decrees and judgments against Norton ?
Congress intended to encourage the conversion of state banks into national banks. To further this intent it provided an easy mode of effecting the change without materially interrupting the business of the bank. When that mode was adopted the national bank' became the owner of all of the assets of its predecessor (the state bank), of whatever nature. In this case the First National Bank of Warren was organized by the stockholders of the state bank; it actually succeeded the Western Reserve Bank of Warren in its location and business, and became possessed of no assets that would not have belonged to it if the statutory mode of transformation had been adopted. In another mode the new national bank was legally constituted and *537 assets of its predecessor transferred to it. As we construe the “Act to provide-a national currency” it clothes a national bank with power tó succeed a state bank; to hold and own its assets, and then pursue the business of banking under the limitations of the act itself. Whether it .becomes such successor in the mode provided by the act, or in the manner adopted by the plaintiff, is immaterial in this case. We hold that the plaintiff is the legal owner of the claims set out in the petition as amended. See first paragraph of the syllabus in Ehrman v. Ins. Co., 35 Ohio St., 324; also the last paragraph of the opinion of Peck, J., in White’s Bank of Buffalo v. Toledo Ins. Co., 12 Id., 610.
What is the nature of these claims ?
Before Norton’s cTeath the Western Reserve Bank had obtained a personal judgment against him in one case and decrees in both for the sale' of the mortgaged premises. Instead of making the executor a party to the cases, and enforcing sales under the decrees, the bank and Norton’s executor agreed that the latter might use the power to sell, given by the will, he agreeing, as executor, to pay the decrees in full with interest and costs, as preferred claims. This agreement entitled the bank to receive from the executor so much of the proceeds of the mortgaged premises as equalled the decrees with the interest and costs, or to receive a like amount out of the other Norton assets, notwithstanding such payment to it might consume those assets and leave other liabilities of that estate unpaid. This arrangement was beneficial to the estate. It saved further costs §,nd expenses in the suits, and gave the executor at least an opportunity for getting higher prices for the land. Such an agreement was within the scope of the executor’s powers, and made it unnecessary for the bank to formally present the claims for allowance. If any such presentation was necessary, this agreement accepted the statements of Mr. Scribner as such presentation, and admitted that both decrees were .valid claims against the estate. We think the four years’ statute of limitation did not apply to either of them under the facts stated in the petition as amended or *538 in the reply, and the common pleas did not err in overruling the demurrer to the reply to that defense.
Under the agreement the executor was required to pay the decrees out of the proceeds of the mortgaged premises, or oxd of the Norton estate as preferred claims. So long as he retained enough of that estate to make such payment, he did not make himself individually liable to the bank. This action is predicated upon such individual liability. It is true that the petition charges that part of the proceeds of the mortgaged premises and other assets of the Norton estate had come into the possession of the defendants, and sought to give effect to a lien upon them; but it prayed for a judgment against the Hurd estate, and the evidence showed that no Norton assets came to the defendants. The defendants are not liable in this action as, in any sense, the representatives of the Norton estate. Their only power and duty touching that estate was to file an account showing Hurd’s transactions while executor, and to deliver to his successor, when appointed, the remaining moneys and assets, if any, of that estate.
Treating the action as one against the Hurd estate, upon his individual liability, when, if ever, did the statute of limitations begin to run ? So long as he retained assets of Norton, sufficient to pay the decrees in full, his mere delay to make the promised payment created no personal liability. So long as the settlement of the Norton estate remained open; so long as Hurd delayed to file his accounts in the probate court, all unpaid claims that he, as executor, had admitted to be valid, remained in full force and effect against that estate. Holding the moneys and assets of the estate in a trust capacity, he held them subject to the right of the bank to priority in payment, and the moment he, by otherwise applying them, made it impossible for him to pay the bank out of the Norton estate, he became individually liable to the bank. But as such payment by him under the case shown was a fraud upon the bank, the statute would not begin to' run in his favor, if at all, until the bank had knowledge that he had so acted as to incur this liability.
*539 The petition does not show when the bank first acquired such knowledge. As it set out a valid claim to the proceeds of the sale of the mortgaged premises and averred that part of said proceeds were in defendant’s hands, the common pleas did not err in overruling the demurrer to the petition as amended.
The defendants sought to avail themselves of the six years’ bar. This imposed upon them the burden of proving that Hurd individually ought to have been sued more than six years before this action was begun. The exhibit from the probate court showed that Hurd had, during his lifetime, disposed of all of the Norton assets, and so made it impossible to pay the bank out of that estate. But there was no evidence even tending to show when Hurd so disabled himself, or ivhen the bank 'first had notice of it. Hence the common pleas did not err in finding that the plaintiffs’ action against the Hurd estate was not barred, or in overruling the motion for a new trial.
But that court did err, as we think, in holding the claim a preferred debt against the Hurd estate, If the record disclosed any specific assets of the Norton estate in the hands of the Hurd administrators, the plaintiff would be entitled to an order applying them upon the judgment; but no such fact is shown.
Judgments of the district court and common pleas reversed and decree for plaintiffs for the amount found by the trial court, with interest and costs. Execution to run against the Hurd estate.